# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| SHERYL ROBINSON, | No. ED CV 17-2238-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff filed this action on November 1, 2017, seeking review of the Commissioner's[1] denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

December 5, 2017, and December 8, 2017. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on June 15, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on December 20, 1963. [Administrative Record ("AR") at 210, 216.] She has past relevant work experience as a hospital admissions clerk, as a caregiver/home attendant, as a medical biller, and as a collections clerk, medical. [AR at 31-32, 73.]

On November 25, 2013, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since December 1, 2010. [AR at 21, 210-15, 216-37.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 159.] A hearing was held on June 23, 2016, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 38-74.] A vocational expert ("VE") also testified. [AR at 72-73.] On August 11, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from December 1, 2010, the alleged onset date, through August 11, 2016, the date of the decision. [AR at 21-33.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 203-05.] When the Appeals Council denied plaintiff's request for review on September 6, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Lounsburry</u>, 468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that she is unable to perform past relevant work.  <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a <u>prima facie</u> case of disability is established.  <u>Id.</u>  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  <u>Lounsburry</u>, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 721, 828 n.5 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1257.

/

/

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 1, 2010, the alleged onset date.[2] [AR at 23.] At step two, the ALJ concluded that plaintiff has the severe impairments of obesity; lumbago; cervicalgia; complex degenerative tear in the left lateral meniscus; and degenerative joint disease of the bilateral knees. [Id.] He also found that her medically determinable impairments of plantar fasciitis, asthma, obstructive sleep apnea, breast cysts and/or noncancerous breast masses, and depression, were nonsevere. [AR at 23-24.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 26.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] as follows:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; she is precluded from climbing ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she is precluded from concentrated exposure to extreme heat, and wetness; and she is precluded from even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.

[AR at 27.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. [AR at 23.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

that plaintiff is able to perform her past relevant work as a hospital admissions clerk (<u>Dictionary of Occupational Titles</u> ("DOT") No. 205.362-018) and as a medical biller (DOT No. 214.482-018), both as "generally performed pursuant to the DOT, and as actually performed by [plaintiff]"; and as a collections clerk, medical (DOT No. 241.357-010), as "generally performed pursuant to the DOT, but as actually performed as sedentary work as described by [plaintiff]."[5] [AR at 31-32.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of December 1, 2010, through August 11, 2016, the date of the decision. [AR at 32-33.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he considered plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A. LEGAL STANDARD**

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017) (citing <u>Garrison</u>, 759 F.3d at 1014-15).[6] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Id.</u> (quoting <u>Garrison</u>, 759 F.3d at 1014-15); <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir.

---

[5] In fact, plaintiff described her work as a collections clerk as "requir[ing] a lot of moving around the hospital, and a lot of walking around the hospital, sitting . . . ." [AR at 71.]

[6] The Ninth Circuit in <u>Trevizo</u> noted that Social Security Ruling ("SSR") 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" <u>Trevizo</u>, 871 F.3d at 687 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR[7] 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)). The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 27-29], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina, 674 F.3d at 1112; Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be

---

[7] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1 forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of
2 disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony
3 is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam);
4 Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not
5 credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806
6 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony
7 to the particular parts of the record" supporting his non-credibility determination).

**B.     PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

As summarized by the ALJ, plaintiff testified as follows:

> At the hearing, [plaintiff] testified about her medical condition. [She] alleged that back pain, knee pain, and neuropathy limited her ability to work. Specifically, [she] testified that the impairments caused symptoms such as difficulty walking, gripping, grasping, and shopping. She claimed she has numbness in her upper extremities. Moreover, [she] described that she has multiple cysts in her breasts.
>
> In addition to [plaintiff's] testimony, the undersigned has also considered the statements from [plaintiff's] other written submissions. [Her] statements in these written submissions mirror the subjective complaints from [her] testimony. Specifically, [she] noted in the function report and questionnaires that the impairments affected her capacity to perform several activities of daily living, such as with performing some household chores, and driving. [She] further noted that difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering, completing tasks, concentrating, using her hands, getting along with others, handling stress, and handling changes in routine limited [her] ability to work. She claimed she has asthma attacks when there are radical weather changes or when she catches a cold.

[AR at 27-28 (citations omitted).]

Plaintiff notes that she also testified regarding the following symptoms and limitations not mentioned by the ALJ: she is limited in her ability to sit, stand, or lie down too long, and her prescription medications affect her ability to concentrate and cause fatigue; she does not sleep well, and some mornings she is unable to grasp to tie her shoelaces; she has severe knee pain, which limits her ability to stand; on some days she cannot reach or use her hands; she does dishes every day for about 30 minutes; she is unable to mop, sweep, do laundry, or iron; she goes grocery shopping once a month; she cannot sit for too long to watch TV, read, or use a computer;

8

she is irritable and short-tempered; she has a caregiver who helps with personal care due to her pain limitations; she is unable get recommended knee replacement surgery until her breast reconstruction surgeries are concluded; she can lift about 10 pounds; she is allergic to the plastic in the mask and tubing in her CPAP machine and is unable to use it; she lies down two to three times a day for a total of at least four hours; she can stand approximately 30 minutes at a time; and she is unable to sit for more than one hour at a time. [JS at 6-7 (citations omitted).]

The ALJ discounted plaintiff's subjective symptom testimony for the following reasons: (1) her statements are inconsistent with the objective medical evidence; (2) her activities of daily living "are inconsistent with [her] statements concerning the alleged intensity, persistence, and limiting effects" of her symptoms; and (3) her allegation that she is unable to work due to her mental impairments is not supported by the objective evidence, which shows that she received routine and conservative care with medications, did not regularly see a psychiatrist or psychologist, had never been hospitalized for her depression, and the findings from the mental status examination at the psychiatric consultative examination were "benign."[8]  [AR at 28-29.]

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because he failed to properly consider plaintiff's subjective statements of record, and testimony under oath, regarding her impairments, symptoms, and resulting limitations, when he assessed plaintiff's RFC. [JS at 4-5.] She also contends that the ALJ failed to properly consider the lay witness testimony of plaintiff's sister, Lori Alford. [JS at 6.] Defendant responds that the ALJ's reasons for discounting plaintiff's subjective symptom testimony and the testimony of Ms. Alford were based

---

[8]  Although defendant attempts to broaden this reason for rejecting plaintiff's subjective symptom testimony to plaintiff's treatment for her *physical* impairments [JS at 23], the ALJ specifically limited this reason for discounting plaintiff's testimony to her alleged *mental* impairment of depression and the limitations she testified she experiences as a result of that impairment. Because plaintiff does not take issue with the ALJ's finding regarding her mental impairment, and this reason as given by the ALJ did not address her subjective symptom testimony as to her severe physical impairments, the Court will not further address this reason for rejecting plaintiff's testimony. The Court also notes that the ALJ made mention of plaintiff's "routine, conservative, and non-emergency treatment," seemingly to support his finding that "[t]he positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein." [See AR at 29.] The ALJ's RFC determination also is not directly at issue herein.

on proper legal standards and supported by substantial evidence. [JS at 14.]

### 1.     Statements Inconsistent with the Objective Medical Evidence

The ALJ stated that plaintiff's "statements about the alleged intensity, persistence, and limiting effects of her symptoms are inconsistent with the objective medical evidence." [AR at 28.] Specifically, the ALJ then concluded as follows:

> [Plaintiff] alleged that her asthma reduced [her] ability to perform work-related activities. In the Asthma Questionnaire from December 2013, [plaintiff] alleged that her asthma was a recurring problem. The alleged intensity, persistence, and limiting effects of these symptoms, however, are inconsistent with the evidence in the record. For example, the record does not show that [plaintiff] suffered frequent or severe asthma attacks that required intensive treatment, inpatient hospitalization, or physician intervention. Moreover, the record does not demonstrate that [she] had any significant issues related to asthma, such as issues with variable and recurring symptoms, reversible airflow obstruction, bronchospasm, recurrent episodes of wheezing, or production of sputum. Accordingly, the undersigned finds that the objective medical evidence and the other evidence of record do not support the level of symptomology that [plaintiff] alleged and is inconsistent with [her] statements concerning the alleged intensity, persistence, and limiting effects of her symptoms.

[AR at 28 (citing AR at 203).]

Plaintiff contends that the ALJ's suggestion that plaintiff's statements are not supported by the objective medical evidence "simply defies common sense as well as the objective medical evidence itself." [JS at 11.] She submits that there is ample objective evidence supporting her complaints of bilateral knee pain and swelling, which cause difficulties sitting, standing, and walking, and that is only relieved by lying down and elevating her lower extremities, as well as prescription medications and heat application, among other things. [JS at 11-12.] For instance, she notes that a March 17, 2013, MRI of her left knee revealed "an extensive complex tear of the lateral meniscus, as well as cartilage loss in that knee"; the record reflects multiple complaints of bilateral knee pain and swelling; a March 21, 2013, examination of her left knee "revealed positive findings of her degenerative knee" problem; she was diagnosed with left knee degenerative joint disease and internal derangement; she reported that the pain in her left knee increased with prolonged sitting, standing, walking, and bending, as well as other postural activities, and was

helped by heat, elevation, prescription medications, and limited activity; a March 28, 2013, examination of her left knee found "numerous positive objective findings"; and on August 14, 2013, she reported to the emergency room with right knee pain and swelling and difficulty ambulating, and the x-ray revealed "severe arthrosis of the patellar femoral joint with narrowing of the joint space." [JS at 10-12 (citations omitted).]

Defendant concedes that while a lack of objective medical evidence cannot be the sole reason for rejecting plaintiff's excess symptom testimony, "it was the primary factor that the ALJ was required to consider." [JS at 20 (citing 20 C.F.R. § 404.1529(c)(2)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).] Defendant asserts that plaintiff's medical testing showed that she "was consistently neurologically intact and, although she reported tenderness, there was no positive straight leg tests corroborating low back pain due to sciatica." [Id.] She further asserts that "no doctor indicated that the objective findings [relating to plaintiff's knees] warranted surgical intervention." [Id.] Defendant then summarizes the same records summarized by the ALJ in support of his determination that "[t]he positive objective clinical and diagnostic findings . . . detailed below do not support more restrictive functional limitations than those assessed herein." [JS at 19-22 (see also AR at 29-31).]

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871 F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins, 261 F.3d at 857.

Here, the ALJ stated his conclusion that plaintiff's testimony was inconsistent with the objective medical evidence for one reason alone: because her statements regarding her *asthma* were inconsistent with the objective evidence regarding her treatment and findings related to that condition. [AR at 28.] As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific

finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted). The "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493. Even assuming in this case that the ALJ's statement discounting plaintiff's allegations regarding her *asthma* -- which the ALJ found to be nonsevere -- is specific, clear and convincing and supported by substantial evidence, the ALJ did not provide any explanation as to how that testimony undermined plaintiff's subjective symptom *pain* testimony regarding her functional limitations with respect to walking, standing, or sitting, due to her severe back and knee impairments, or even "link that testimony to the particular parts of the record" supporting his non-credibility determination. Brown-Hunter, 806 F.3d at 494.

Neither does the ALJ's review of the medical evidence to support his RFC determination, which details many of the same findings mentioned by defendant above, suffice to remedy this problem. Those reasons were not offered by the ALJ with respect to his decision to discount plaintiff's subjective symptom testimony and "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting plaintiff's subjective symptom testimony that were not given by the ALJ in the decision. See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

Thus, this was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony regarding her knee and back pain and the functional limitations resulting from her knee and back pain and impairments.[9]

---

[9] Even assuming that this was a specific, clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom testimony regarding her knee and
(continued...)

### 2. Activities of Daily Living

The ALJ also noted the following about plaintiff's subjective symptom testimony:

> . . . [Plaintiff's] activities of daily living are inconsistent with [her] statements concerning the alleged intensity, persistence, and limiting effects of symptoms. The case record shows that [plaintiff] takes care of her personal hygiene activities, prepares simple meals, performs some household chores, uses public transportation, shops, handles money, uses the computer, and talks on the telephone. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. [Plaintiff's] ability to participate in such activities is inconsistent with [her] statements concerning the alleged intensity, persistence, and limiting effects of symptoms.

[AR at 28 (citations omitted).]

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim, 763 F.3d at 1165). However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).

---

[9](...continued)
back pain, this reason by itself cannot be the sole legally sufficient reason for discounting plaintiff's subjective symptom testimony. The ALJ's determination to discount plaintiff's subjective symptom testimony for this reason, therefore, rises or falls with the ALJ's other ground for discrediting plaintiff's testimony. As seen below, the other proffered ground is insufficient as well.

Plaintiff contends that the ALJ "mischaracterized Plaintiff's description of her activities of daily living . . . , and that Plaintiff has quite specifically and consistently maintained that while she is capable of engaging in certain minimal activities of daily living for brief periods of time, she is simply incapable of sustaining those activities as would be required by full time competitive employment." [JS at 10.] She further submits that "it simply makes no sense and reflects circular reasoning to accept some of Plaintiff's statements regarding her activities of daily living and find Plaintiff credible in reference to those activities . . . while simultaneously rejecting Plaintiff's credibility without anything further as to her limitations in sitting, standing, and walking as well as the need to lie down." [Id.] She notes that the "ALJ appears to be suggesting that Plaintiff has alleged that she is in fact an invalid, which is simply not the case," and reiterates that "she is simply not capable of sustaining those activities as would be required by full time competitive employment, and in particular those occupations she has previously performed which she would love to return to if in fact she was capable of doing so." [JS at 11.]

Defendant responds that it was "not improper for the ALJ to consider this factor," and that "where a claimant is able to perform various household chores such as cooking, laundry, washing dishes, and shopping, the ALJ properly finds that it suggests the claimant is able to perform a reduced range of light work." [JS at 24 (citing Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (internal quotation marks omitted)).]

Here, the ALJ merely summarized some of plaintiff's activities of daily living, and then concluded -- without taking into account any testimony regarding plaintiff's limited ability to perform those activities -- that those activities are the same as those necessary for obtaining and maintaining employment. He did not elaborate any further as to how any of these activities are similar to those necessary for obtaining and maintaining employment, or for regularly completing an eight-hour workday, especially in light of plaintiff's testimony regarding the scope of her ability to perform those activities. Neither did he find that plaintiff spent a substantial part of her day performing these activities. Orn v. Astrue, 495 F.3d 635, 639 (9th Cir. 2007) ("[D]aily activities

may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ's vague boilerplate rationale, therefore, was not a clear and convincing reason supported by substantial evidence to support his decision to discount plaintiff's testimony.

Similarly, although the ALJ mentioned that plaintiff testified she could perform personal hygiene activities, prepare simple meals, perform some household chores, use public transportation, shop, use the computer, and talk on the telephone, not only did the ALJ fail to "link that testimony to the particular parts of the record" supporting his non-credibility determination, he also failed to take into account that plaintiff testified -- both in her adult function questionnaire and at the hearing -- that she rides in a cart to get around the grocery store; she has problems holding a cup of coffee; there are some days she cannot reach or use her hands "due to nerves"; she can lift, but not hold, approximately ten pounds; her medications cause drowsiness; she can only stand for 30 minutes to fix a *simple* meal, if she "push[es] it"; she does not do mopping, sweeping, laundry, repairs, or ironing; she is able to do the dishes for up to 1/2 hour daily; when she reads, watches TV, or works on the computer she does not do it for too long because she cannot sit for too long; and she gets cramps and spasms going up her right side if she sits for any length of time. [See AR at 49-56, 58-61, 281-86.]

The mere fact that plaintiff carries on certain daily activities "does not in any way detract from her credibility as to her overall disability." Revels, 874 F.3d at 667-68 (citation omitted). An ALJ must take into account a claimant's description of her daily activities and any limitations on her ability to complete those activities. Id. at 668 (noting that the bar for rejecting a claimant's symptom testimony is a high one). In this case, the ALJ merely recited plaintiff's activities without taking into account her alleged limitations in completing those activities. He also did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his non-credibility determination. Brown-Hunter, 806 F.3d at 494.

Thus, this was not a specific, clear and convincing reason supported by substantial

evidence for discounting plaintiff's subjective symptom testimony.

### 3. Conclusion

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her subjective symptom testimony regarding her impairments and limitations. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

## C. LAY WITNESS TESTIMONY

Plaintiff's sister, Lori Alford, completed a third-party function report, to which the ALJ gave "partial weight." Specifically, the ALJ stated the following:

> . . . [Plaintiff's] sister indicated that [plaintiff] has constant pain. Further, this opinion noted that [plaintiff] had difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, sitting, climbing stairs, remembering, completing tasks, concentrating, using her hands, and getting along with others. This opinion, however, reflects the limitations expressed in [plaintiff's] testimony, which the undersigned has found to be inconsistent with overall evidence of record. Moreover, the undersigned discounts this opinion because it inconsistently noted that [plaintiff] was able to perform several activities of daily living, such as preparing meals, shopping, handling money, and performing household chores. This opinion is not supported by the clinical or diagnostic medical evidence that is discussed elsewhere in this decision. In addition, although a layperson can offer an opinion on a diagnosis, the severity of the claimant's symptoms, or the side effects of medication in relationship to the claimant's ability to work, the opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein.

[AR at 29 (citations omitted).]

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The Ninth Circuit has held that "regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." Id. (citing Valentine, 574 F.3d at 694 (internal quotation marks

omitted)); see also Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)).

A lack of support from the "overall medical evidence" is also not a proper basis for disregarding a lay witness' observations. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (quoting Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone "is precisely why such evidence is valuable at a hearing." Id. (citing Smolen, 80 F.3d at 1289 (holding that ALJ erred where the ALJ rejected the testimony of claimant's family members about claimant's symptoms because the medical records did not corroborate those symptoms)). Thus, to the extent the ALJ gave Ms. Alford's testimony "partial weight" because it "reflect[ed] the same limitations expressed in [plaintiff's] testimony, which the undersigned has found to be inconsistent with the overall evidence of record," for the same reasons discussed above with respect to the ALJ's treatment of plaintiff's testimony, his similar treatment of Ms. Alford's testimony fares no better. This was not a reason germane to the witness to give only "partial weight" to her observations.

Further, notwithstanding defendant's attempt to provide an explanation, the ALJ's statement that Ms. Alford's opinion "inconsistently noted that [plaintiff] was able to perform several activities of daily living, such as preparing meals, shopping, handling money, and performing household chores," is puzzling. The ALJ did not further elaborate as to what those statements were inconsistent with or how they were inconsistent. In fact, they seem to be similar to plaintiff's statements, and even provide additional detail to the testimony provided by plaintiff. [See AR at 270-72.] For instance, Ms. Alford states that plaintiff is able to prepare frozen dinners, or fix a sandwich, "otherwise just plain, simple meals"; she brings a chair into the kitchen to sit on at the counter while she is cooking; she does not do any household tasks other than laundry, which she

does about twice a week for a total of three hours; she shops for medications and/or groceries once a month; and she is able to handle money. [Id.] With respect to plaintiff's ability to complete personal care tasks, Ms. Alford also elaborated that plaintiff can only wear slip-on shoes and has difficulty getting her pants on; sits down to shower; sits while doing her hair; and uses the sink for leverage when in the bathroom. [AR at 269.] While these statements may not perfectly "mirror" plaintiff's testimony, neither do they contradict it in any significant fashion. This was not a germane reason to give "partial weight" to Ms. Alford's observations.

Remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective symptom allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony regarding her mental and physical impairments and limitations. In making

this assessment, the ALJ on remand may also need to reassess the medical opinion evidence of record, and then explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. The ALJ on remand shall also reconsider Ms. Alford's lay witness testimony and provide legally sufficient reasons germane to that witness if the ALJ determines that her testimony should be disregarded. Based on the ALJ's reassessment of plaintiff's subjective symptom testimony, the lay witness testimony, and the medical evidence of record, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a hospital admissions clerk; medical biller; and/or collections clerk, medical.[10] If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then, if applicable, the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

/

/

/

/

/

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work as a caregiver/home attendant.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 8, 2018

*/s/ Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE